THE HARMONIE CLUB, INC. *vs.* CHARLES M. SMIRNOW.

Third Judicial District, New Haven, January Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and ELLS, Js.

Acts of part performance will remove an oral agreement from the statute of frauds provided they are such as clearly refer to some contract in relation to the subject matter in dispute and are of such a character as to be naturally and reasonably accounted for in no other way than by the existence of such an agreement.

Upon such proof first being made, parol evidence of an existing contract to which these acts and facts are referable, is admissible.

This rule preserves the salutary effect of the statute and, at the same time, ensures that its purpose shall not be subverted by enabling one to practice a palpable and substantial fraud by its use and in its name.

The complaint alleged that after the defendant had received $1,000 for an option on the sale of his property from a prospective purchaser who had employed an architect, and secured a permit for the erection of a business building thereon, the plaintiff and other neighboring owners entered into an oral agreement with the defendant that if they would relieve him from further responsibility under the option and allow him to keep the money already received, he would join with them in executing a written contract whereby both he and they would bind themselves not to permit their several properties to be used or occupied for business purposes for a period of five years; and that, although the plaintiff and other owners had carried out their obligations under this agreement, by procuring the necessary releases and by paying $1,000 to the prospective purchaser in addition to the expense of the building permit and the services of the architect, the defendant had refused to sign the written contract and had himself commenced the construction of a business building upon his premises. Upon the trial the plaintiff offered to produce testimony showing complete performance on its part and establishing the terms of the oral agreement, all of which the trial court excluded on the ground that even though the plaintiff and the other owners had performed all the acts alleged in the complaint, they were insufficient to remove the contract from the statute of frauds. *Held* that the trial court erred.

Argued January 20th—decided June 6th, 1927.

ACTION for an injunction restraining the defendant from using certain property for business purposes, for a decree compelling him to execute a written contract, for damages, and for other relief, brought to the Superior Court in New Haven County and tried to the court, *Avery, J.;* judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*Benjamin Slade,* with whom was *Louis Weinstein,* for the appellant (plaintiff).

*Charles S. Hamilton* and *Walter J. Walsh*, for the appellee (defendant).

ELLS, J.   The complaint alleges that the plaintiff is the owner of premises located on Whitney Avenue in New Haven which it uses for club purposes; that the defendant, who owns neighboring property on the other side of the street, gave an option through a broker for the sale of his property and received therefor $1,000; that the prospective purchaser, in furtherance of plans to use the premises for business purposes, employed an architect to prepare plans, and procured a building permit; and that thereupon all of the property owners on Whitney Avenue within the blocks bounded by Lawrence and Cottage streets became fearful that their property would be seriously damaged by the advent of stores or business places in this neighborhood, and entered into a verbal agreement with the defendant whereby it was agreed that if they would relieve him from further responsibility on the option, allow him to keep the $1,000 he had already received, and procure a release from his liability to the broker, the defendant would agree, in writing, to and with the plaintiff and the other property owners within said blocks, their administrators, executors, successors and assigns, that no part of the property owned by him, or by them, would be used or occupied for a period of five years as a store, or for business or public or club purposes, except that two of the property owners then occupying their premises as clubs could continue to do so.   It is further alleged that the plaintiff and the other property owners, relying on the agreement and being induced thereby, carried out their agreement and procured the releases, paid $1,000 to the prospective purchaser, and in addition paid $24 for the building permit, and $95 to the architect, and also executed a

written agreement expressing the contract between the
parties, but that the defendant not only wilfully re-
fused to execute it, but that he has taken out a building
permit himself and has begun building operations for
the purpose of altering the building for stores and
business purposes. It is further alleged that if the
defendant is permitted to complete and use these stores,
the value of the property belonging to those who exe-
cuted the agreement will be greatly lessened, and that
the plaintiff brings the action for the benefit of the
other owners who were parties to the agreement. The
defendant pleaded a general denial.

Upon the trial the plaintiff called as its witness the
agent of the plaintiff, who is alleged to have made the
oral agreement with the defendant, and asked him to
state the conversation he had had with the defendant.
This was objected to as an attempt to prove a verbal
agreement that the property should not be used for
any of the purposes set up in the complaint, which
verbal agreement was obnoxious to the statute of
frauds because it attempted orally to place a negative
restriction for the period of five years on the defend-
ant's premises, and thereby attempted to create an
interest in the plaintiff in the premises of the defend-
ant, and also because it was a mere verbal contract
not to be performed within one year, and could not
be performed in less than five years, and placed a re-
striction on the property for that period of time. The
court sustained the objection on the second ground and
excluded the evidence. The plaintiff then offered to
present testimony to show complete performance on
the part of the plaintiff of the verbal agreement with
the defendant, but the court ruled that "assuming that
all the things have been done and all the acts and pay-
ments and performances as claimed in the complaint,"
they still are not sufficient to take the case out of the

statute of frauds on the ground of performance. No further offer of evidence was made by the plaintiff, whereupon the court adjudged that defendant recover his costs of the plaintiff.

We will first consider whether the acts alleged in the complaint and which plaintiff offered evidence to prove, constitute a sufficient performance to take the case out of the statute of frauds. The principle is clear. " 'A party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat these acts as if it had never existed. That is the principle; but the acts must be referable to the contract.' " *Eaton* v. *Whitaker,* 18 Conn. 222, 230. The modern authorities seem to support one or the other of two rules, one requiring the acts of part performance to be referable to the contract set up, and the other and more liberal one holding the acts sufficient if they are such as clearly refer to some contract in relation to the subject-matter in dispute, the terms of which may then be established by parol. We have adopted the latter and more liberal rule. *Bradley* v. *Lovejoy,* 98 Conn. 315, 320, 119 Atl. 174; *Andrew* v. *Babcock,* 63 Conn. 109, 122, 26 Atl. 715.

This rule requires that it must first appear that these acts are of such a character as to be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject-matter in dispute before parol evidence of the terms of the contract becomes admissible. *Van Epps* v. *Redfield,* 69 Conn. 104, 110, 36 Atl. 1011.

The situation assumed by the trial court to have been established is that the defendant, owning property in a residential neighborhood, agreed through a broker to sell his property and receive $1,000 down on the option or agreement; that the prospective

purchaser hired an architect who drew plans whereby this residential property was to be turned into stores, and took out a building permit to do the work; that the plaintiff, owning neighboring residential and private club property, arranged with the prospective purchasers to release the defendant from his liability to sell to them, and for the defendant to keep the $1,000 payment, procured a release from the broker of his claim against the defendant for commission, repaid the prospective purchasers $1,090 retained by the defendant, and paid for the building permit and the architect's services. These acts we think point unmistakably to an agreement and can be accounted for in no other way than as having been done in the performance of an agreement. It clearly appears from these acts that there must have been some agreement between the parties upon the strength of which, and in pursuance of which, the plaintiff has acted in a part performance which would be to its injury if the defendant was not compelled to perform. The acts of performance in this case point not only to an agreement, but to one having to do with a restriction of the use of this property for business purposes. It satisfies not only our liberal rule, but also would probably fulfil the requirement of the stricter rule to which we have alluded.

The purpose of the rule is clear. Such acts of performance as occur in this case, for instance, done with the obvious consent and knowledge of the defendant, resulting in his enrichment and in injury to the plaintiff, change the situation contemplated by the statute. The defendant should not be allowed to say that although it is clearly shown by the acts themselves that there was an agreement, he will nevertheless treat the acts as if the agreement never existed, accept the benefits, and make the plaintiff shoulder the loss. He would thus practice a palpable and substantial fraud upon

the plaintiff, and would do it in the name of and by the use of a statute whose whole purpose is to prevent fraud.

The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud. There is danger, however, that it be invoked in a loose form to reach what is believed to be an equitable result in a specific case, and therefore our decisions have carefully limited it so that it shall not unduly restrict, infringe upon, or lessen the salutary effect of the statute against frauds. This limitation placed on the doctrine of part performance results in the requirement that the plaintiff in such an action must first prove acts and facts which point unmistakably to a contract between himself and the defendant which cannot be accounted for, and are inexplicable, unless done in pursuance of a contract and which would not have been done without an existing contract. Upon such proof being made, parol evidence of an existing contract to which these acts and facts are referable, is admissible. A situation of this character is not within the mischief of the statute of frauds. This procedure does not permit the plaintiff to first offer proof of a verbal contract and then offer proof that it has been partly performed.

We think the trial court should have admitted the evidence of the acts of performance because they are clearly referable to some contract between the parties within the meaning of the rule which we have just stated. The acts in this case amount to much more than the mere payment of the consideration, which is held in *McMahon* v. *Plumb,* 88 Conn. 547, 553, 92 Atl. 113, not to amount to an act of part performance taking the case out of the statute. It is clear that in the present case there is no adequate remedy at law, and we think the acts of performance sought to be

proved are such acts as call upon a court of equity to exercise its undoubted right to relax the strict application of the statute for the prevention of fraud. *Simon* v. *New Britain Trust Co.*, 80 Conn. 263, 267, 67 Atl. 883. The limitations of this equitable power have been defined by us with care and precision. *Andrew* v. *Babcock*, 63 Conn. 109, 119, 26 Atl. 715; *Van Epps* v. *Redfield*, 69 Conn. 104, 109, 36 Atl. 1011; *Verzier* v. *Convard*, 75 Conn. 1, 6, 52 Atl. 255.

This conclusion makes a new trial necessary and we therefore do not decide the other questions raised by the appeal, since it does not appear that they will be of any great importance in the retrial of the case.

There is error and a new trial is ordered.

In this opinion the other judges concurred.